IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

CAROLYN DERRYBERRY, )
)
       Plaintiff, )
)
vs. ) Case No. CIV-16-207-C
)
PHARMERICA CORPORATION, )
)
       Defendant. )

MEMORANDUM OPINION AND ORDER

Plaintiff is suing Defendant for life insurance benefits under the Employee Retirement Income Security Program ("ERISA"), 29 U.S.C. §§ 1001 et seq., after the accidental death of Plaintiff's husband, Mr. Derryberry. Defendant argues no life insurance benefits are due because the policy was not yet in effect at the time of Mr. Derryberry's death. The parties have filed cross motions for summary judgment. (Def.'s Mot. Summ. J., Dkt. No. 39; Pl.'s Partial Mot. Summ. J., Dkt. No. 41). Both parties have responded in turn and the Motions are now at issue. Also at issue are Defendant's Motions in Limine. (Dkt. Nos. 37, 54). The Court will address each herein.

Mr. Derryberry accepted Defendant's job offer in November 2013 and began working on December 2, 2013. Later in December, Mr. Derryberry inquired about life insurance benefits and received a response from Ms. Pollard (the "Pollard Letter"), a PharMerica employee, stating:

> You will have 31 days from your full time hire date to enroll in benefits. My records indicate your full time date of hire is 12/2/2013 if this date is correct, you will need to go through the enrollment process on the website by

12/31/2013 to participate in the benefits. Your coverage will take effect on 1/1/2014 provided that you enroll before the deadline.

(Dkt. No. 31-1) (emphasis omitted). Mr. Derryberry enrolled in the PharMerica Life and Accidental Death & Dismemberment Insurance Plan ("the Plan") on December 24, 2013, naming Plaintiff as his primary beneficiary. The Plan states "[i]f you are a newly hired full-time employee, coverage begins on the first of the month following 30 days after your date of hire." (Dkt. No. 30-1, p. 9.) Regrettably, Mr. Derryberry perished on January 20, 2014. After Defendant denied her request for benefits, Plaintiff brought this suit.

Plaintiff asserted claims to recover benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and the Court determined "Mr. Derryberry's benefits were not yet in force at the time of his death," therefore Defendant did not owe benefits to Plaintiff based on the plain language of the Plan. (Order, Dkt. No. 34, p. 5.) Plaintiff's equitable claims of estoppel and surcharge asserted under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), remain. Plaintiff argues the Court should not apply a deferential standard of review to Defendant's decision to deny benefits and the undisputed facts show Ms. Pollard was a Plan fiduciary. Defendant argues the case should be decided as a matter of law because the undisputed facts show Plaintiff has failed to make out an estoppel or surcharge claim. The Court will address each in turn.

The standard for summary judgment is well established. Summary judgment may only be granted if the evidence of record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth specific facts outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(c). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## I: Standard of Review

Plaintiff makes what is essentially a request for the Court to reconsider its decision in the Order Granting in Part and Denying in Part Defendant's Motion for Judgment on the Pleadings. (Dkt. No. 34.) To be successful with a motion for reconsideration, Plaintiff must rely on Fed. R. Civ. P. 59. This requires that the movant show one of the grounds warranting a motion for reconsideration, including: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000) (citation omitted). As the Tenth Circuit as stated, "[i]t is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." Id.

Plaintiff argues the Court should have applied a de novo standard of review to the denial of benefits under § 1132(a)(1)(B). However, this argument would have been

appropriate in prior briefs; the time for asserting this point has passed.  Plaintiff has asserted no new law, facts, or clear error to justify reconsideration.  Moreover, the Court's decision to grant judgment to Defendant on this issue was based on the requirements of the plain language of the Plan.  See Martinez v. Plumbers & Pipefitters Nat'l Pension Plan, 795 F.3d 1211, 1219 (10th Cir. 2015) (stating the first step in reviewing ERISA policies is to determine whether the plan is ambiguous by considering its "common and ordinary meaning") (citations and internal quotation marks omitted).  This leads to the conclusion that either the de novo or the deferential standard would have yielded the same result:  Mr. Derryberry was not insured under the Plan at the time of his death.[1]  Plaintiff's request is denied.

## II:  Surcharge

Defendant argues the undisputed facts show Defendant is entitled to summary judgment on the surcharge claim.  Surcharge is a form of equitable relief permitted by § 1132(a)(3).  To make out a surcharge claim, Plaintiff must show by a preponderance of the evidence that a fiduciary caused some actual harm.  CIGNA Corp. v. Amara, 563 U.S. 421, 444 (2011).  This actual harm can "consist of detrimental reliance, but it might also come from the loss of a right protected by ERISA or its trust-law antecedents."  Id.  Defendant argues this remedy is not available because Ms. Pollard was not acting as a fiduciary, and

---

[1] Plaintiff's argument regarding the "inconsistent" waiting period is immaterial because only one time period is stated in Mr. Derryberry's Plan.  The cited e-mail is not binding Plan language.

4

even if she was, there was no actual harm, and PharMerica is not the proper party to pay a surcharge.

The Court will first address the fiduciary status of Ms. Pollard, the author of the Pollard Letter that Plaintiff alleges Mr. Derryberry relied upon when making his insurance enrollment decisions. Absent being named in the plan, a person can act with fiduciary authority under ERISA if she has "authority or responsibility that is discretionary, which entails the freedom to decide what should be done in a particular situation." Lebahn v. Nat'l Farmers Union Unif. Pension Plan, 828 F.3d 1180, 1184 (10th Cir. 2016) (citation omitted) (internal quotations marks omitted). ERISA describes a fiduciary as follows:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

The parties dispute Ms. Pollard's title, but not her duties. Plaintiff's Undisputed Material Fact Number ("UMF No.") 12 states "Ms. Pollard was responsible for sending information to new hires regarding their benefit enrollment." (Pl.'s Partial Mot. Summ. J. Dkt. No. 41, p. 4.) Defendant did not dispute this fact. Defendant's UMF No. 2 states Ms. Pollard's job function was to "[r]espond to employee benefit inquiries; resolve[] benefit[] eligibility/enrollment issues with vendors and internal systems; [and] work[] with payroll,

finance, and other departments to administer benefits according to plan provisions, applicable regulations and internal guidelines." (Def.'s Mot. Summ. J., Dkt. No. 39, p. 5) (emphasis omitted).

Plaintiff disputes this fact, arguing Ms. Pollard was acting as a de facto fiduciary. In support, Plaintiff argues that because no one reviewed the letters Ms. Pollard sent to new hires, she was "clearly delegated the responsibility of communicating and managing enrollment for Mr. Derryberry." (Pl.'s Resp. to Mot. Summ. J., Dkt. No. 49, p. 8.) However, this assertion remains unsupported. Plaintiff has not provided any facts to genuinely dispute Ms. Pollard's job function described in Defendant's UMF No. 2, so the Court deems this fact undisputed.

Plaintiff cites persuasive authority in an effort to demonstrate decisions imposing liability based on mistakes in managing insurance enrollment. See generally, Fink v. Dakotacare, 324 F.3d 685 (8th Cir. 2003) (failure of fiduciary caused coverage gap); Lanpher v. Metro. Life Ins. Co., 50 F. Supp. 3d 1122 (D. Minn. 2014) (fiduciary's lack of proper enrollment caused denial of supplemental benefits); Atwood v. Swire Coca-Cola, USA, 482 F. Supp. 2d 1305 (D. Utah 2007) (failure to enroll plaintiff using certain enrollment card resulted in denial of benefits under the plan). These cases involve situations where the actions of insurance representatives caused an individual harm by shortchanging insurance coverage. Here, Ms. Pollard's letter misstated the coverage start date, causing Mr. Derryberry to enroll earlier than necessary; she did not cause any detriment to the coverage as detailed by the Plan.

6

In an effort to provide clarity to the issue of what actions trigger fiduciary responsibilities, the Code of Federal Regulations includes questions and answers on the topic. One question asks if people performing the following administrative tasks are fiduciaries with respect to the plan:

> (1) Application of rules determining eligibility for participation or benefits;
> (2) Calculation of services and compensation credits for benefits;
> (3) Preparation of employee communications material;
> (4) Maintenance of participants' service and employment records;
> (5) Preparation of reports required by government agencies;
> (6) Calculation of benefits;
> (7) Orientation of new participants and advising participants of their rights and options under the plan;
> (8) Collection of contributions and application of contributions as provided in the plan;
> (9) Preparation of reports concerning participants' benefits;
> (10) Processing of claims; and
> (11) Making recommendations to others for decisions with respect to plan administration?

29 C.F.R. § 2509.75-8. The Code answers in the negative. "Only persons who perform one or more of the functions described in [§ 1002(21)(A)] with respect to an employee benefit plan are fiduciaries." Id. Ms. Pollard communicated with Mr. Derryberry (task 3) regarding when he would be eligible for benefits (task 1), and determined when the enrollment period would begin based on his hire date (tasks 7 and 9). The Court is unconvinced that Ms. Pollard possessed any discretionary control or authority in regard to the Plan as described in § 1002(21)(A) that could make the questioned tasks anything more than administrative in nature. Compare Lebahn, 828 F.3d at 1186 (stating that "merely calculating benefits, without more, does not establish fiduciary status under ERISA"). Because Ms. Pollard was

7

performing administrative, rather than fiduciary, tasks when she sent the Pollard Letter, Plaintiff's surcharge claim must fail.

Even if Ms. Pollard were acting as a fiduciary on behalf of PharMerica, judgment must be entered in favor of Defendant because Plaintiff has failed to demonstrate actual harm. Plaintiff argues the harm is that Mr. Derryberry relied upon the misleading Pollard Letter and "[b]enefits were part of the consideration for employment offered by [Defendant] and accepted by Mr. Derryberry." (Pl.'s Partial Mot. for Summ. J., Dkt. No. 41, p. 8). However, as stated above, the complained-of actions did not deprive Mr. Derryberry or Plaintiff of any benefits that were actually conveyed by the Plan. Mr. Derryberry's reliance on the Pollard Letter merely induced early enrollment. In fact, the early enrollment did not cause premium payments to be deducted from Mr. Derryberry's paycheck prematurely; he simply filled out the paperwork earlier than necessary. While Plaintiff claims the harm done is that Mr. Derryberry died during a time when Defendant promised to pay benefits to his wife, this simply is not true under the Plan. The Pollard Letter had no authority to alter Plan terms and the Court finds the Pollard Letter did not cause any recoverable harm. Defendant is entitled to judgment.

### III: Equitable Estoppel

Plaintiff asserts an estoppel claim, a form of equitable relief available under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). The Tenth Circuit "assume[d] without deciding" the elements of an ERISA equitable estoppel claim are:

> 1) conduct or language amounting to a representation of material fact; 2) awareness of the true facts by the party to be estopped; 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; 4) unawareness of the true facts by the party asserting the estoppel; and 5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

Lebahn, 828 F.3d at 1188 n.7 (quoting Palmer v. Metro. Life Ins. Co., 415 F. App'x 913, 920 (10th Cir. 2011)).

As discussed above, the Pollard Letter did not cause any actual harm to Plaintiff under the terms of the Plan. Because the fifth element of detrimental reliance is a "more rigorous standard" than actual harm, Plaintiff is not entitled to favorable judgment. Amara, 563 U.S. at 444 (2011) (stating detrimental reliance implicitly connotes a more rigorous standard than actual harm); see also Jensen v. Solvay Chems., Inc., 721 F.3d 1180, 1185 (10th Cir. 2013) (finding that "plaintiffs who seek the remedy of estoppel must demonstrate that the defendant's statement in truth, influenced the conduct of the plaintiff, causing prejudice") (citation omitted) (internal quotation marks omitted). Plaintiff wholly fails to address the remaining elements of the claim or offer any arguments directly related thereto. Defendant is entitled to judgment.[2]

---

[2] The Court will not address Plaintiff's time limit argument because the insurance claim was denied by PharMerica and decided by the Court on its merits rather than based on timeliness.

9

CONCLUSION

As set forth herein, the undisputed facts demonstrate Defendant is entitled to judgment on the surcharge and equitable estoppel claims. Accordingly, Defendant's Motion for Summary Judgment (Dkt. No. 39) is GRANTED and Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 41) is DENIED. Defendant's Motions in Limine (Dkt. Nos. 37, 54) and Defendant's Motion to Strike (Dkt. No. 58) are stricken as MOOT. A separate judgment shall issue.

IT IS SO ORDERED this 26th day of January, 2017.

ROBIN J. CAUTHRON
United States District Judge